IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CHRISTOPHER CARLSON, §<br>Plaintiff, §<br>§<br>v. §<br>§<br>CRH AMERICAS MATERIALS, INC., §<br>Defendant. § | A-25-CV-920-ADA-ML |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE:

Before the court is Defendant CRH Americas Materials, Inc.'s Motion to Dismiss Plaintiff's First Amended Petition (Dkt. 5) and all related briefing.[1] After considering the parties' briefing and applicable law, the undersigned recommends the following to the District Judge.

I. **BACKGROUND**[2]

On January 25, 2024, Plaintiff Christopher Carlson was employed by Defendant CRH Americas Materials, Inc. ("CRH") and attended a virtual work meeting held on Microsoft Teams. Dkt. 1-3, Ex. A-18 (First Am. Pet., "FAP") ¶ 15. During a break in the meeting, Carlson opened Facebook and "accidentally played part of a brief video featuring [a comedian] which was suggestive in nature" while his microphone was unmuted. *Id.* ¶¶ 16, 17. A colleague alerted him that his microphone was unmuted, and the meeting "resumed without incident." *Id.* ¶¶ 17, 18. On January 26, 2024, CRH's human resources department informed "Carlson of an alleged report claiming his actions constituted sexual harassment," and Carlson was placed on administrative

---

[1] United States District Judge Alan D Albright referred motions in this case to the undersigned for disposition or report and recommendation pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Standing Order dated Feb. 27, 2025.

[2] At this stage of the litigation, all well-pleaded facts are taken as true.

1

leave. *Id.* ¶¶ 19, 20. On January 30, 2024, CRH found that Carlson violated company policy and was guilty of sexual harassment, and CRH terminated Carlson's employment. *Id.* ¶ 21. Carlson had been employed by CRH for eight years as a Senior Manager of Business and Systems Development. *Id.* ¶ 15.

Carlson alleged that only the following CRH employees were involved with the decision to terminate his employment: Suresh Rangarajan, Kimberly Lesperance, Brian Fuhriman, Gaurav Dhir, Eric Dunlop, and Saba Valji. *Id.* ¶ 25. Carlson alleged that one of these individuals, or another employee who learned it from one of them, informed CRH employee Sarah Diehl that Carlson "had been terminated for sexual harassment." *Id.* ¶ 26. Carlson alleged that Sarah Diehl informed a former CRH employee, Shayne Ellis, that Carlson had been terminated for sexual harassment, and that Shayne Ellis informed another former CRH employee of the same. *Id.* ¶¶ 27, 28. Carlson alleged it is unknown how many other CRH and non-CRH employees were informed of this reason for the termination of his employment. *Id.* ¶ 29.

Carlson alleged that the "intent" of this false statement is "to depict [him] as a sexual predator unfit to work in the profession he has held for over forty years" and that the "Defendant acted with actual malice by engaging in reckless behavior without regard for the truth or falsity of the statements it published." *Id.* ¶ 32. Carlson alleged that this intent or actual malice is shown by "[Defendant] disclosing the reasons for Carlson's termination [to those] who were not involved and, thus, had no reason to be aware of it and, in turn, disclosing it to non-employees of CRH." *Id.* ¶¶ 33-34. Carlson alleged that "[l]eaked information" has extended beyond the confines of CRH and "tarnished [his] reputation, causing emotional distress as former colleagues question him," as well as damaged his professional relationships and ability to secure new employment. *Id.* ¶¶ 22, 24, 35. Carlson alleged that former CRH executives have approached him to inquire about the

matter and that he has constant fear of encountering "more questions from respected former colleagues" and anxiety of who may or may not have heard the false statement. *Id.* ¶¶ 37-39. Carlson further alleged that he fears for the "survival of his career and the ability to provide for his family" and that the "termination led to the Texas Workforce Commission denying unemployment benefits, compounding financial hardship." *Id.* ¶¶ 23, 44.

Carlson initially filed his lawsuit in state court on January 24, 2025, bringing one claim for defamation per se.[3] Dkt. 1 ¶ 3. After misidentifying the proper defendant, Carlson filed his First Amended Petition and named CRH as his sole Defendant. *Id.* ¶ 8; FAP. CRH then removed the case to federal court based upon diversity jurisdiction and filed the instant Motion to Dismiss. Dkt. 1; Dkt. 5 (Mot.). Carlson has not amended his complaint since removal; the First Amended Petition remains the live complaint.

CRH moves to dismiss Carlson's defamation per se claim on five grounds. CRH argues that Carlson failed to allege any publication of false statements to a third party; failed to allege any statements were made that were defamatory in nature; failed to allege CRH acted with actual malice regarding the truth of any false statement regarding Carlson; failed to identify the alleged speakers or any basis for holding CRH liable for any alleged statements; and CRH argues that it is entitled to the defense of truth. *See* Mot. Carlson responded, arguing that he is not required to allege the exact language of the defamatory statements, that the statements were made with the appropriate degree of intent, that CRH raises scope of employment issues better suited for a later stage in the litigation, and that CRH is not entitled to the defense of truth when the "gist" of the statement is considered. Dkt. 8 (Resp.). CRH replied, reiterating its arguments and adding that Carlson is subject to the federal pleading standard upon removal to federal court. Dkt. 9 (Rep.).

---

[3] Defamation has a one-year statute of limitations in Texas. TEX. CIV. PRAC. & REM. CODE § 16.002.

3

## II. STANDARD OF REVIEW

"Upon removal, the federal pleading standards control." *Peña v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018). When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations

and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (citation modified) (quoting *Iqbal*, 556 U.S. at 680).

### III. ANALYSIS

#### A. Applicable Law

For a private individual to assert a prima facie claim of defamation, he must allege (1) publication of a false statement of fact to a third party, (2) that was defamatory, (3) made with a requisite degree of fault of negligence, and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Whether a statement qualifies as defamation per se is generally a question of law.[4] *Id.* at 596. A statement is considered defamation per se if, on its face, it falls within one of the following four categories: (1) it falsely accuses someone with the commission of a crime; (2) it falsely imputes that a person has a loathsome disease; (3) it falsely imputes sexual misconduct; or (4) it injures a person in their office, profession, or occupation. *Id.* Damages are presumed if the publication is defamation per se. *Id.*

A private plaintiff need only prove that a defendant was "at least negligent" when proving the requisite degree of fault. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Additionally, an employer is liable for defamation only if the defamation "falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002).

---

[4] Texas continues to distinguish between defamation per se and per quod. *Lipsky*, 460 S.W.3d at 596 n.13. Defamation per quod is defamation that is not actionable per se. *Id.* at 596.

B.  **Discussion**

In his Response, Carlson clarified there are three alleged instances of defamation: "(1) Unknown CRH Employee #1 reported him to HR for sexual harassment after the virtual meeting, (2) Unknown CRH Employee #2 disclosed to Sarah Diehl, a CRH employee, that Carlson was terminated for sexual harassment, and (3) Ms. Diehl disclosed the same information to Shayne Ellis, a former CRH employee."[5] *See* Resp. at 5 (citing FAP ¶¶ 19, 26-27).

The parties' arguments generally fall into two categories: whether Carlson pleaded facts to support CRH's liability for the statements and whether Carlson pleaded facts to support the requisite degree of fault.

1.  *CRH's Liability*

When a plaintiff sues an employer rather than an employee, the plaintiff must show the allegedly defaming comments were made "within [the employee's] general authority and for the benefit of the employer." *Minyard Food Stores*, 80 S.W.3d at 578. The law does not countenance employer liability for an employee's words without showing the relevant statement served the employer's interests. *Id.* Furthermore, the "Texas Supreme Court has explained that even when an employer requires employees to discuss other employees in the course of workplace misconduct investigations, such discussions are not in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Crouch v. JC Penney, Inc.*, 337 F. App'x 399, 402-03 (5th Cir. 2009) (citation modified).

CRH contends that Carlson has not identified who published the alleged defamatory statement and has not alleged how CRH should be liable for such a statement. Mot. at 10-11. Carlson argues that it would be error to dismiss his claim at this stage when the identity of the

---

[5] As such, the court does not address CRH's arguments made regarding other statements.

divulging employee may be found out through discovery. Resp. at 9-10. Carlson further argues that scope of employment is a fact-based inquiry more suited to a later stage of litigation. *Id.* at 10.

Taking Carlson's three alleged defamatory statements in turn, Carlson did not allege how a report by "Unknown CRH Employee #1" to human resources would have been for the benefit of CRH or in furtherance of the employee's job duties. Carlson alleged no theory for holding CRH liable for the employee's actions, but he argues that it would be erroneous to dismiss his claim at this stage when discovery could reveal the identity of the employee who is responsible. However, Carlson has not asserted a cause of action against "Unknown CRH Employee #1"; he asserts a cause of action against CRH and has failed to allege any means by which CRH could be liable for the actions of this employee.

Second, Carlson alleged a second unknown CRH employee informed Sarah Diehl, who was not involved in the decision to terminate Carlson's employment, that Carlson was terminated for sexual harassment. FAP ¶ 26. Again, Carlson failed to allege a theory for how this second person acted in furtherance of CRH's business and for the accomplishment of the object for which the employee was hired. At most, Carlson alleges that five CRH employees were involved in the decision to terminate his employment, and he speculates one of them must have informed Diehl. *Id.* ¶¶ 25-26. However, he does not allege how one of the five would have acted within the scope of their employment when telling Diehl. *See Lyons v. Starbucks Coffee Co.*, No. 3:19-CV-2457-S-BT, 2020 WL 5732638, *4 (N.D. Tex. Aug. 24, 2020) (granting employer's 12(b)(6) motion because plaintiff failed to show that "employee acted within the course and scope of his or her authority or employment when he or she allegedly . . . defamed [plaintiff]").

Third, Carlson alleged that Diehl informed former CRH employees that Carlson was terminated for sexual harassment. Again, Carlson made no factual allegations to support that Diehl

7

was acting in the scope of her employment or in furtherance of CRH's interests. The undersigned agrees that whether Diehl or the unknown employees were acting within the scope of employment would be a fact issue better left for summary judgment, except Carlson never made any allegations to support finding CRH vicariously liable for any of these alleged acts. Therefore, the undersigned finds that Carlson has failed to allege a theory of liability against his sole Defendant, CRH, and the undersigned recommends that CRH's motion to dismiss be granted in its entirety.

      2.      Fault

In the defamation context, a private individual generally need only prove negligence in making a false statement. *Bedford*, 520 S.W.3d at 904. However, when a defendant is entitled to a qualified privilege, such as in the context of statements made in the course of an employer's internal investigation, a plaintiff must prove actual malice. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) ("[only p]roof that a statement was motivated by actual malice existing at the time of publication defeats the privilege"). A statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth. *Id.* (citing *Hagler v. Procter & Gamble Mfg. Co.*, 884 S.W.2d 771 (Tex. 1994)).

CRH argues that Carlson's allegations do not rise to the requisite degree of negligence because CRH has a qualified privilege attached to "communications made in the course of an investigation following a report of employee wrongdoing." *Randall's Food Markets*, 891 S.W.2d at 646. Carlson argues that the qualified privilege could, at most, apply to "(1) Unknown CRH Employee #1's report to HR and (2) Unknown CRH Employee #2's disclosure to Diehl"; that he has alleged actual malice with respect to those communications; and that he is not required to show Diehl acted with malice or abused a privilege. Resp. at 8-9.

First, concerning Unknown CRH Employee #1's report to HR, Carlson did not allege any

facts as to the statement this employee made to HR; he only alleged that HR told him that someone reported him for sexual harassment. FAP ¶ 19. Carlson also made no factual allegations as to whether this unknown employee acted with actual malice when "claiming his actions constituted sexual harassment" to HR, and his conclusory statements regarding intent and actual malice do not relate to this alleged statement.[6] Finally, Carlson did admit to the underlying "actions"—playing a suggestive video during a work meeting. Therefore, in the first instance, the undersigned finds Carlson has not alleged that a false statement was published with reckless disregard for the truth.

For Carlson's second alleged instance of defamation, he alleged an unknown CRH employee, ostensibly involved in the decision to terminate Carlson, informed Diehl that Carlson was terminated for sexual harassment. FAP ¶ 26. Although Carlson disagrees that his actions constituted sexual harassment, Carlson has not alleged any facts showing this statement was made with knowledge of its falsity or with reckless disregard to the truth. Carlson himself alleged that "CRH concluded Mr. Carlson was guilty of sexual harassment and violated company policy, terminating his employment." *Id.* ¶ 21. Therefore, the undersigned finds that Carlson has failed to allege a false statement was made with actual malice in the second instance.

Finally, Carlson need only show negligence on the part of Diehl publishing the statement to former employees. However, Carlson only alleged that intent was shown "by CRH disclosing the reasons for Carlson's termination [to those] who were not involved and, thus, had no reason to be aware of it and, in turn, disclosing it to non-employees of CRH." FAP ¶ 34. This allegation is insufficient to allege that Diehl acted with any negligence regarding the truth of the statement. Accordingly, the undersigned finds that Carlson has failed, in all three instances, to allege facts

---

[6] Carlson stated, "[intent and actual malice are] demonstrated by CRH disclosing the reasons for Carlson's termination [to those] who were not involved and, thus, had no reason to be aware of it and, in turn, disclosing it to non-employees of CRH." FAP ¶ 34.

9

demonstrating intent.

## IV. RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. 5) be **GRANTED** and Plaintiff's claim of defamation per se be **DISMISSED WITHOUT PREJUDICE**.

Although Plaintiff has not requested leave to amend, should Plaintiff ask during the objections period, the undersigned **RECOMMENDS** the District Judge **GRANT** such a request.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED November 12, 2025.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE