**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER CARLSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | A-25-CV-920-ADA-ML |
| | § | |
| CRH AMERICAS MATERIALS, INC., | § | |
| Defendant. | § | |

**ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant CRH Americas Materials, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 23), Plaintiff Carlson's Opposed Motion to Extend Scheduling Order Deadlines (Dkt. 27), and all related briefing.[1] After considering the parties' briefing and applicable law, the undersigned recommends the following to the District Judge.

**I.    BACKGROUND[2]**

Plaintiff Christopher Carlson was employed by Defendant CRH Americas Materials, Inc. ("CRH"), a building materials provider, for eight years before he was terminated on January 30, 2024. Dkt. 22 (SAC) ¶¶ 9, 16. Carlson held the title Senior Manager of Business and Systems Development at the time of his termination. *Id.* ¶ 16.

On January 25, 2024, Carlson attended a virtual work meeting held on Microsoft Teams. *Id.* ¶ 16. During a break in the meeting, Carlson opened Facebook and accidentally played a video clip in which Hannah Berner, a comedian whose content includes topics such as dating,

---

[1] United States District Judge Alan D Albright referred motions in this case to the undersigned for disposition or report and recommendation pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Standing Order dated Feb. 27, 2025.

[2] At this stage of the litigation, all well-pleaded facts are taken as true.

1

relationships, and sex, asked a man, "When you make love to a woman, how do you know she's not faking her orgasm?" *Id.* ¶¶ 17-19. The man replied, "I don't know, I know I make them shake and shiver." *Id.* ¶ 19. Unbeknownst to him, Carlson's microphone was unmuted, and his coworkers heard the audio through the Teams call. *Id.* ¶ 20. When a coworker pointed this out to Carlson, he immediately muted his microphone, and the meeting resumed. *Id.* ¶ 21.

CRH's Code of Business Conduct ("CoBC") mandates that employees who have genuine concerns that the CoBC is being violated must report their concerns. *Id.* ¶ 11; Dkt. 22-1 at 4, Ex. 1 (CoBC). CRH further defines sexual harassment as follows:

- Physical contact and advances

- A demand or request for sexual favors

- Making sexually colored remarks

- Showing pornography

- Any other unwelcome physical, verbal, or non-verbal conduct of a sexual nature.

SAC ¶ 39; Dkt. 22-1 at 29, Ex. 3 (CRH Sexual Harassment Policy). On January 26, 2024, CRH's Human Resources department ("HR") informed Carlson that "two employees, whom [HR] did not identify, submitted a report claiming that his foregoing actions constituted sexual harassment," and CRH placed Carlson on administrative leave. *Id.* ¶¶ 23-24. On January 30, 2024, CRH concluded that Carlson violated company policy and was guilty of sexual harassment. *Id.* ¶ 25. CRH terminated Carlson's employment that same day. *Id.*

Carlson filed suit against CRH, alleging his former employer is liable for defamation. Carlson alleged three instances of defamation per se in which a CRH employee proclaimed Carlson's actions constituted sexual harassment or that Carlson was terminated for sexual harassment. *Id.* ¶¶ 23, 31-34. First, the two employees ("Reporting Employees") who reported

Carlson to HR defamed him by claiming his actions constituted sexual harassment; second, the six CRH employees involved in the investigation and decision to terminate Carlson's employment ("Executive Employees") defamed him by disclosing the reason for Carlson's termination to employees not involved in the investigation or decision, such as Stephen Morris and Sarah Diehl; and third, Sarah Diehl (who bore no responsibility for investigating or discipling Carlson) informed a former CRH employee, Shayne Ellis, that Carlson had been terminated for sexual harassment. *Id.* ¶¶ 33-34.

Carlson further alleged that Shayne Ellis informed another former CRH employee that Carlson had been terminated for sexual harassment, and that this statement spread amongst other former CRH and non-CRH employees in his field, damaging his personal and professional reputations. *Id.* ¶¶ 36, 47-51. Carlson suffered reputational, professional, and monetary damages as a result of this alleged defamation, including the denial of unemployment benefits from the Texas Workforce Commission. *Id.* ¶¶ 26-27.

Carlson alleged that the "intent" of CRH's wrongful conduct is "to depict [him] as a sexual predator unfit to work in the profession he has held for over forty years" and that "CRH acted with actual malice by engaging in reckless behavior without regard for the truth or falsity of the statements it published." *Id.* ¶¶ 43-44. Carlson alleged that this intent or actual malice is shown by "CRH disclosing the reasons for Carlson's termination [to those] who were not involved and, thus, had no reason to be aware of it and, in turn, disclos[ed] it to non-employees of CRH." *Id.* ¶ 45. Carlson further alleged that the Reporting Employees and Executive Employees were acting in CRH's interests, either pursuant to the CoBC or "likely" in connection to their investigation of the report, respectively. *Id.* ¶¶ 68-71.

Carlson initially filed his lawsuit in state court on January 24, 2025, bringing one claim for defamation per se,[3] and he amended his complaint while in state court to substitute in the proper Defendant, CRH. Dkt. 1 ¶¶ 3, 8. Upon being named in the First Amended Petition, CRH removed the case to federal court based upon diversity jurisdiction and filed its initial Motion to Dismiss. Dkt. 1; Dkt. 5 (Mot.). The undersigned recommended dismissing Carlson's claims without prejudice and granting leave to amend, and the District Judge adopted these recommendations. Dkts. 17; 21. The live complaint is now Carlson's Second Amended Complaint (Dkt. 22, SAC).

CRH moves to dismiss Carlson's defamation per se claim on five grounds. CRH argues that Carlson failed to allege the following: any basis for holding CRH liable for the alleged statements; that any defamatory statements were made with the requisite intent; publication of false statements to a third party; that any statements were made that were defamatory in nature; and CRH argues that it is entitled to the defense of truth. *See* Mot. Carlson responded, arguing that CRH is liable under *respondeat superior*, any qualified privilege was forfeited because the statements were made with actual malice, and the accusation that he is guilty of sexual harassment is not substantially true. Dkt. 24 (Resp.). CRH replied, reiterating its arguments and arguing that many of Carlson's allegations are conclusory or speculative. Dkt. 25 (Rep.).

## II.    STANDARD OF REVIEW

"Upon removal, the federal pleading standards control." *Peña v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018). When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

---

[3] Defamation has a one-year statute of limitations in Texas. TEX. CIV. PRAC. & REM. CODE § 16.002.

Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (citation modified) (quoting *Iqbal*, 556 U.S. at 680).

### III.   ANALYSIS

#### A.   Applicable Law

For a private individual to assert a prima facie claim of defamation, he must allege (1) publication of a false statement of fact to a third party, (2) that was defamatory, (3) made with a requisite degree of fault (negligence or actual malice), and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Whether a statement qualifies as defamation per se is generally a question of law.[4] *Id.* at 596. A statement is considered defamation per se if, on its face, it falls within one of the following four categories: (1) it falsely accuses someone with the commission of a crime; (2) it falsely imputes that a person has a loathsome disease; (3) it falsely imputes sexual misconduct; or (4) it injures a person in their office, profession, or occupation. *Id.* Damages are presumed if the publication is defamation per se. *Id.*

When the plaintiff brings suit against his employer, the employer is liable for defamation only if the defamation "falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). The law does not countenance employer liability for an employee's words without showing the relevant statement served the employer's interests. *Id.* at 578. Furthermore, "even when an employer *requires* employees to discuss other employees in the course of workplace misconduct investigations, such discussions are not [always] 'in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired.'" *Crouch v. JC Penney, Inc.*, 337 F. App'x 399, 402-03 (5th Cir. 2009) (citing *Minyard*, 80 S.W.3d at 577-79). "There is a critical distinction between defaming someone to one's employer and defaming someone for

---

[4] Texas continues to distinguish between defamation per se and per quod. *Lipsky*, 460 S.W.3d at 596 n.13. Defamation per quod is defamation that is not actionable per se. *Id.* at 596.

one's employer." *Minyard*, 80 S.W.3d at 579. Accordingly, an employer "cannot be liable for defamation simply because it *allowed* employees to report misconduct to HR," nor can it be liable for lies told *to* it by its employees. *Id.*; *Crouch*, 337 F. App'x at 403.

Additionally, a private plaintiff need only prove that a defendant was "at least negligent" when proving the requisite degree of fault. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). However, when a defendant is entitled to a qualified privilege, such as in the context of statements made in the course of an employer's internal investigation, a plaintiff must prove actual malice. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) ("[only p]roof that a statement was motivated by actual malice existing at the time of publication defeats the privilege"). A statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth. *Id.* (citing *Hagler v. Procter & Gamble Mfg. Co.*, 884 S.W.2d 771 (Tex. 1994)).

**B.      Discussion**

The court begins its analysis by assessing Carlson's allegations regarding imputing liability to CRH for its employees' conduct before addressing whether Carlson has alleged the elements of his claim. The court takes each alleged instance of defamation in turn.

*1.      The Reporting Employees*

In the SAC, Carlson alleged that all CRH employees are required, through the Code of Business Conduct, "to report violations of the CoBC including, but not limited to, sexual harassment." SAC at ¶¶ 68-69. Carlson alleged that the Reporting Employees' and the Executive Employees' instances of defamation arise from this duty. CRH argues that it cannot be liable for the Reporting Employees' conduct due to the difference outlined in *Minyard* between "defaming

someone *to* one's employer and defaming someone *for* one's employer." *Minyard*, 80 S.W.3d at 579 (emphasis added).

This argument reveals a fundamental flaw in Carlson's choice to bring his defamation claim solely against his former employer when the alleged defamation involves intra-company communications, as previously confronted by the District Court in *Crouch I. See Crouch v. J.C. Penney Corp., Inc.*, 564 F. Supp. 2d 642, 647 (E.D. Tex. 2008) ("*Crouch I*"), *aff'd sub nom. Crouch v. J C Penney Corp., Inc.*, 337 F. App'x 399 (5th Cir. 2009) (unpublished) ("*Crouch II*"). In *Crouch*, a former manager of J.C. Penney brought a defamation claim, among others, against J.C. Penney following her termination. J.C. Penney moved for summary judgment, and the district court initially found a genuine issue of material fact existed as to the alleged defamer's intent when making the statement. *Crouch v. J.C. Penney Corp., Inc.*, 562 F. Supp. 2d 833, 843 (E.D. Tex. 2007). Thus, that court could not determine whether J.C. Penney was liable for its employee's statement at that stage. *Id.* However, following that decision, J.C. Penney moved for reconsideration, and the district court revised its previous opinion because "[u]pon reconsideration, the court cannot divine how a lie told by Smith (if he were telling the truth, the statements would not be defamatory in the first place) to J.C. Penney about Crouch could possibly be 'in furtherance of the employer's business.'" *Crouch I*, 564 F. Supp. 2d at 647.

Likewise, a lie told about Carlson *to* CRH cannot be in CRH's interest or in furtherance of CRH's business. *Minyard*, 80 S.W.3d at 579. Carlson alleged the Reporting Employees' defamatory statement was their report to HR claiming that his "actions constituted sexual harassment." SAC ¶ 23. Under *Minyard* and *Crouch*, assuming the Reporting Employees defamed Carlson—which, by definition requires sharing a false statement to CRH—then they could not have acted in furtherance of CRH's business. If the Reporting Employees did not publish a false

8

statement of fact to HR, then perhaps they could have been acting in the scope of employment; however, the statement would not then be defamation. Accordingly, the undersigned finds that Carlson's allegations regarding the Reporting Employees' conduct are deficient as a matter of law to plausibly impute liability to CRH.

Furthermore, Carlson alleged that the Reporting Employees "acted with actual malice because Carlson did not engage in the kind of behavior that *typically* constitutes sexual harassment in the workplace or as defined by CRH's sexual harassment training; as such, they knew that their statements were false or acted with reckless disregard as to their falsity." SAC ¶ 40 (emphasis added). However, in his briefing, Carlson stops short of arguing that he affirmatively did not engage in "[a]ny other unwelcome . . . verbal . . . conduct of a sexual nature," Dkt. 22-1 at 29, Ex. 3 (CRH Sexual Harassment Policy), although he denies engaging in any other conduct under the policy, Resp. at 13. Although an accusation of sexual harassment is legally cognizable as defamation, Carlson pleaded only that his actions do not "typically" constitute sexual harassment, and he did not argue that his actions did not constitute unwelcome verbal conduct of a sexual nature. Accordingly, the undersigned finds that Carlson's allegations as to intent and falsity are insufficient to plead that the Reporting Employees acted with the requisite intent or made a false statement of fact. Finally, Carlson failed to allege publication to a third party because internal communications regarding the plaintiff's conduct amongst supervisors and decisionmakers do not constitute publication. *See Mandawala v. N.E. Baptist Hosp., Counts 1, 2, and 11*, 16 F.4th 1144, 1153 (5th Cir. 2021) (finding the plaintiff's claim "must fail" on the element of publication where the school supervisor and clinical coordinator shared their criticisms of plaintiff with each other and school faculty).

### 2.    The Executive Employees

Carlson alleged that the Executive Employees "are responsible for, *inter alia*, investigating allegations of employee misconduct and making decisions regarding employee discipline including, but not necessarily limited to, termination." SAC ¶ 30. Thus, Carlson has alleged that investigation is a job duty of the Executive Employees and any defamation on their part could have been done within the course and scope of their employment. *E.g.*, *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 777 (Tex. App.—Texarkana 1995, writ denied) (finding employer liability where managers made defamatory statements, with the requisite intent, to other employees while investigating the plaintiff's conduct). However, in order to support this theory, Carlson  further alleged that "*to the extent* that the Executive Employees disclosed the reason for Carlson's termination to other CRH employees, they were acting within the scope of their employment because they *likely* did so in connection with their investigation of the report against Carlson and/or when addressing the other CRH employees who attended the virtual meeting." SAC ¶ 70 (emphasis added). Carlson makes two assumptions here: (1) that the Executive Employees made any defamatory statements at all and (2) that they did so in connection with their investigation.

While reasonable inferences are drawn in the plaintiff's favor at the motion to dismiss stage, "conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss." *Toronka v. Conti. Airlines, Inc.*, 649 F. Supp. 2d 608, 611 (S.D. Tex. 2009). Carlson insists that "[t]he only way that any CRH employees other than the Executive Employees, such as Morris and Diehl, could have learned of the reason for Carlson's termination is if the Executive Employees disclosed it to them." SAC ¶ 35. However, this is not a well-pleaded factual allegation but merely an unwarranted factual deduction that neglects to consider possible actions by the sources of the report or other employees who were on the Teams call. And, as the parties

are aware, the alternatives would likely be insufficient to constitute defamation. *See Calvin v. Puffer-Sweiven, Inc.*, No. 01-97-00041-CV, 1998 WL 608338, at \*4 (Tex. App.—Houston [1st Dist.] Aug. 27, 1998, no pet.) ("Evidence based on mere rumors or unauthorized gossip spread by unidentified co-workers is 'no evidence' of publication by an employer.").

Furthermore, even if Carlson sufficiently alleged that the Executive Employees made an allegedly defamatory statement, he only alleged that the statement was a disclosure of the reason for Carlson's termination. Carlson has admitted to the underlying actions and alleged that CRH terminated him because "CRH concluded Carlson was guilty of sexual harassment and violated company policy." SAC ¶ 25. Thus, the undersigned finds that Carlson has failed to allege that the Executive Employees published any statement to third parties regarding Carlson, that any such statement was false, or that any Executive Employee had the requisite mental state regarding the statement's falsity. Accordingly, the undersigned finds Carlson has failed to state a claim of defamation by the Executive Employees.

### 3. *Diehl*

Finally, Carlson alleged that Diehl was not an investigator or decisionmaker with respect to Carlson's conduct on the Teams call. Although he argues that scope of employment is a fact issue best reserved for summary judgment, Carlson still must plead factual allegations to support his claims. Carlson does not allege any theory attributing liability over Diehl's comments to CRH. *See generally* SAC. Furthermore, when CRH argued as much in its Motion to Dismiss,[5] Carlson did not take the opportunity to defend his SAC or otherwise respond to CRH's arguments in his Response. Accordingly, the undersigned finds Carlson has abandoned any defamation claim against CRH based on actions by Diehl. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996,

---

[5] *See* Mot. at 9 (arguing Carlson has failed to allege a basis for CRH's liability for Diehl's conduct due to explicitly denying her participation in the investigation and not proposing any other theory).

11

1010 (5th Cir. 2023) (citations omitted) ("This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.").

Additionally, Carlson alleged that Diehl "informed [a former CRH employee] that Carlson had been terminated for sexual harassment." SAC ¶ 33. As discussed previously, Carlson also alleged that "CRH concluded Carlson was guilty of sexual harassment and violated company policy, terminating his employment." *Id.* ¶ 25. Therefore, Carlson has not alleged Diehl published a false statement, and the undersigned finds Carlson's allegations regarding Diehl insufficient to state a claim of defamation per se against CRH.

### 4.    Conclusion

The sum of Carlson's allegations is as follows: he played a suggestive video while in a work environment, the audio of which was audible to his coworkers; he turned the video off when he was made aware others could hear it; two co-workers reported this incident to HR; an investigation conducted by the Executive Employees was initiated; a few days later, CRH concluded Carlson was guilty of sexual harassment and terminated him; the reason for Carlson's termination (sexual harassment) became public knowledge amongst current and former co-workers; and Carlson suffered reputational harms.

It is not the undersigned's place to weigh in on the conclusion or methods of CRH's investigation as that is not the claim before the court. Instead, the undersigned's purview is to judge whether Carlson alleged a plausible claim for defamation per se against his former employer, CRH. The undersigned finds Carlson has not plausibly alleged a defamation claim. Accordingly, the undersigned recommends dismissal of Carlson's suit. As Carlson was previously given leave to amend, the undersigned recommends this dismissal be with prejudice.

## IV.    RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 23) be **GRANTED** and Plaintiff's claim of defamation per se be **DISMISSED WITH PREJUDICE**.

## V.    MOTION TO EXTEND

Also before the court is Carlson's Opposed Motion to Extend Scheduling Order Deadlines (Dkt. 27). The parties agree that all deadlines should be extended by four months. Accordingly, the undersigned **GRANTS** Carlson's Motion with respect to his request to extend the scheduling deadlines.

CRH opposes Carlson's Motion to the extent it seeks a carve-out to allow third-party discovery during the pendency of the Motion to Dismiss Carlson's SAC. In light of the foregoing recommendations, the undersigned concurs with CRH and **DENIES** Carlson's Motion to the extent he requests leave to initiate third-party discovery. Should the District Judge choose not to accept the undersigned's recommendations, discovery upon third parties and opposing parties shall commence immediately.

In summation, the undersigned **GRANTS IN PART and DENIES IN PART** Carlson's Motion to Extend (Dkt. 27). Entry of the Amended Scheduling Order to follow.

## VI.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED March 31, 2026.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE